**MOL, INC., Plaintiff-Appellant,**

v.

**The PEOPLES REPUBLIC OF BANGLADESH, Defendant-Appellee.**

**No. 83–4094.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 14, 1984.

Decided July 3, 1984.

Mildred J. Carmack, John R. Faust, Jr., P.C., Schwabe, Williamson, Wyatt, Moore & Roberts, Portland, Or., for plaintiff-appellant.

Lauri Nicholson, Laurens H. Silver, San Francisco, Cal., for amicus Animal Rights.

Donald J. Lukes, Brophy & Lukes, Portland, Or., for defendant-appellee.

Before WRIGHT, HUG, and NELSON, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

■ MOL, Inc. sues Bangladesh for termination of a licensing agreement for the export of rhesus monkeys from Bangladesh. Because the granting and revocation of a license to export a natural resource are sovereign acts, we have no jurisdiction over this claim. Foreign Sovereign Immunities Act of 1976, 28 U.S.C. § 1604.

FACTS

In 1977, a division of the Bangladesh Ministry of Agriculture granted MOL, Inc., an Oregon corporation, a ten-year license to capture and export rhesus monkeys. The licensing agreement specified quantities and prices and required MOL to build in Bangladesh in 1978 a breeding farm for rhesus monkeys.

By its terms, the agreement was granted "on the grounds and sole condition that the primates exported by [MOL] from Bangladesh shall be used exclusively for the purposes of medical and other scientific research by highly skilled and competent personnel for the general benefit of all peoples of the world." To enable Bangladesh to monitor uses of the monkeys, it required MOL to keep available records on each monkey and arrange for duplicate records in Bangladesh.

The agreement provided for arbitration of disputes, each party selecting one arbitrator. Bangladesh reserved the right to terminate the agreement "without notice if [MOL] has failed to fulfill its obligations under this Agreement."

In November 1977, India banned the export of its rhesus monkeys. As India had been the major exporter of these animals, which are valuable for research because of their anatomical and behavioral similarity to humans, Bangladesh became an important supplier. Although world monkey prices rose while MOL's payments to Bangladesh remained fixed, Bangladesh complied with the licensing agreement through the spring of 1978.

Bangladesh threatened to cancel the agreement in May 1978 because MOL had

not built the breeding farm or exported agreed quantities. MOL denied any departure from the agreement. In September 1978, it delivered some Bangladesh monkeys to the United States armed services for radiobiological research.

Bangladesh announced on January 3, 1979, that it was terminating the agreement because MOL had not constructed the breeding farm in 1978 and had breached the requirement that the monkeys be used only for humanitarian purposes. It claimed that MOL sold the monkeys to the armed services for "neutron bomb radiation experiments."

When MOL sought arbitration, Bangladesh refused, asserting its right to terminate for breach by MOL. Apparently MOL asked the State Department to intervene. Despite these efforts and MOL's reassurances that monkeys would not be used for radiation experiments, Bangladesh did not reinstate the licensing agreement.

In 1982, MOL sued Bangladesh for $15 million. Bangladesh did not appear, and MOL moved for default. Amicus curiae, Attorneys for Animal Rights, moved to dismiss for lack of jurisdiction under the Foreign Sovereign Immunities Act of 1976 (FSIA), 28 U.S.C. § 1604. The district court, 572 F.Supp. 79, denied the default judgment and dismissed the action, holding it barred both by the FSIA and by the act of state doctrine.

Because we decide that the district court lacked jurisdiction under the FSIA, we do not reach the issue whether the act of state doctrine prevented the district court from exercising its jurisdiction.

SOVEREIGN IMMUNITY

MOL argues that Bangladesh does not enjoy sovereign immunity because its acts fall under the commercial activity exception of the FSIA. That Act denies immunity in any case in which the action is based "upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States." 28 U.S.C. § 1605(a)(2). The exception turns on whether the act is commercial:

A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d).

## A. *Burden of Proof*

■ As section 1330(a) indicates, sovereign immunity is not merely a defense under the FSIA. Its absence is a jurisdictional requirement. *See Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). This jurisdictional aspect means that if the foreign state does not appear to assert an immunity defense, the court must satisfy itself on the question of immunity. *Id.* at 1971 & n. 20.

The district court here recognized its duty in view of Bangladesh's default, and considered carefully whether the commercial activity exception applies.

## B. *Commercial Activity*

A crucial step in determining whether the basis of this suit was a commercial activity is defining the "act complained of here." *IAM v. OPEC*, 649 F.2d 1354, at 1357–58; *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 308 (2d Cir.1981), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982) (*act of state* cases). The court must then decide whether that act is commercial or sovereign.

MOL asserts that the activity here relates to Bangladesh's contracting to sell monkeys. It admits that licensing the exploitation of natural resources is a sovereign activity. *Cf. Clayco Petroleum Corp. v. Occidental Petroleum Corp.*, 712 F.2d 404, 408 (9th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 703, 79 L.Ed.2d 168 (1984) (*act of state* doctrine applied). It argues, however, that this suit arises not

from license revocation but from termination of a contract. In essence, Bangladesh lost its sovereign status when it contracted and then terminated pursuant to contract terms.

The argument seems persuasive because, in breaking the agreement, Bangladesh itself spoke in commercial terms, basing its termination on MOL's alleged breaches. The true nature of the action, however, does not depend on terminology.

Bangladesh was terminating an agreement that only a sovereign could have made. This was not just a contract for trade of monkeys. It concerned Bangladesh's right to regulate imports and exports, a sovereign prerogative. *See Bokkelen v. Grumman Aerospace Corp.*, 432 F.Supp. 329, 333 (E.D.N.Y.1977). It concerned Bangladesh's right to regulate its natural resources, also a uniquely sovereign function. *See IAM v. OPEC*, 477 F.Supp. 553, 567–68 (C.D.Cal.1979) (citing United States and international authority), *aff'd on other grounds*, 649 F.2d 1354 (9th Cir.1981). A private party could not have made such an agreement. *See Alfred Dunhill of London, Inc. v. Republic of Cuba*, 425 U.S. 682, 704, 96 S.Ct. 1854, 1866, 48 L.Ed.2d 301 (1976); *Clayco*, 712 F.2d at 408.

MOL complains that this conclusion relies on the *purpose* of the agreement, in contradiction of the FSIA. *See* 28 U.S.C. § 1603(d). But consideration of the special elements of export license and natural resource looks only to the *nature* of the agreement and does not require examination of the government's motives.

In short, the licensing agreement was a sovereign act, not just a commercial transaction. Its revocation was sovereign by nature, not commercial. Bangladesh has sovereign immunity from this suit.

## C. *Direct Effect*

Because the act complained of was not a commercial activity and Bangladesh has sovereign immunity, effect in the United States is irrelevant. *See* 28 U.S.C. § 1605(a)(2).

AFFIRMED.