SECURITY PACIFIC NATIONAL BANK, a National Banking Association, and American International Group, a Delaware Corporation, Plaintiffs–Appellees,

v.

Robert DERDERIAN, aka Bob Derian, aka Bedros A. Derderian, et al., Defendants–Appellants,

and

Miraslav Jocovic, et al., Defendants.

No. 87–6025.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 1989.

Decided March 21, 1989.

Irvine P. Dungan, Gregg A. Stanford, Irvine P. Dungan, Inc., Sacramento, Cal., for defendants-appellants.

Robert Louis Fisher, Barton, Klugman & Oetting, Los Angeles, Cal., for plaintiffs-appellees.

Before ALARCON, BRUNETTI and THOMPSON, Circuit Judges.

ALARCON, Circuit Judge:

Security Pacific National Bank and American International Group (Security Pacific) filed this action against Robert Derderian and others in Los Angeles Superior Court to recover for the illegal conversion and forgery of an $852,000 check. Security Pacific alleged that one of the defendants, Banco BCH Sociedad Nacional (Banco BCH), accepted for deposit in its Tijuana

branch gold coins which derived from proceeds of the stolen check.

Banco BCH, a bank owned by the government of Mexico, removed the action to federal district court pursuant to 28 U.S.C. § 1441(d) and moved to dismiss on the ground of foreign sovereign immunity. 28 U.S.C. §§ 1330, 1602 *et seq.* Prior to a decision on the motion to dismiss, Security Pacific and Banco BCH entered into a stipulation, approved by the district court, which dismissed Banco BCH from the action.

Without determining its jurisdiction over the pending claims, the district court permitted the matter to proceed to trial against the remaining defendants. The district court ordered judgment for Security Pacific, awarding $750,000 in punitive damages and treble damages of $2,550,000. Derderian appeals, contending the judgment is erroneous because the treble damage award does not reflect the amounts previously recovered by Security Pacific and the punitive damage award is excessive.

We do not reach the issue of damages. The judgment must be reversed and the matter remanded to the Los Angeles Superior Court because the district court lacked jurisdiction.

Under the Foreign Sovereign Immunities Act (FSIA) the presence of an immune foreign sovereign defendant deprives a district court of subject matter and personal jurisdiction. 28 U.S.C. §§ 1330, 1602 *et seq.; Argentine Republic v. Amerada Hess Shipping Co.,* — U.S. —, —, 109 S.Ct. 683, 687, 102 L.Ed.2d 818 (1989); *Verlinden B.V. v. Central Bank of Nigeria,* 461 U.S. 480, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). The actions of Banco BCH do not fall within any of the statutory exceptions to sovereign immunity. 28 U.S.C. § 1605. In particular, Banco's commercial activities in this matter had no direct effect in the United States. Because Ban-

co BCH was immune from suit under the FSIA, the district court lacked original jurisdiction over this matter. Therefore, this action must be remanded to the Los Angeles Superior Court. 28 U.S.C. § 1330(a); *see Sullivan v. First Affiliated Securities, Inc.,* 813 F.2d 1368, 1376–77 (9th Cir.) (claims remanded to state court where claims were not within the district court's original jurisdiction), *cert. denied,* — U.S. —, 108 S.Ct. 150, 98 L.Ed.2d 106 (1987); *cf.* 28 U.S.C. § 1447(c).

## I

## PERTINENT FACTS

In 1985, Derderian obtained a blank cashier's check from American International Company (AIC) which he executed in the amount of $852,000.[1] Derderian forged the signatures of two AIC officers. He gave the check to Miraslav Jocovic (Jocovic), who deposited it in his account at Security Pacific National Bank. Jocovic withdrew the funds. He purchased gold coins with the proceeds. He turned some of the money and coins over to Derderian.

Approximately $150,000 of the coins were taken by Jocovic and Sylvia Bastides (Bastides) to Mexico. There, they were deposited in the bank account and safety deposit box of Refugio Bastides, Sylvia's grandmother, in the Tijuana branch of Banco BCH.

On September 16, 1985, Security Pacific filed this action in Los Angeles Superior Court for compensatory damages and equitable relief against Derderian, his parents, Jocovic,[2] Sylvia Bastides, and Banco BCH. Banco BCH removed the case to the district court pursuant to 28 U.S.C. § 1441(d). Thereafter, Banco BCH filed a motion to dismiss on the grounds of foreign sovereign immunity, 28 U.S.C. §§ 1330, 1602 *et seq.,* improper service of process, and insufficient minimum contacts with the forum. The motion was noticed.

---

1. On appeal, Derderian does not challenge the court's finding of liability or the imposition of damages. He only challenges the amount of damages. Thus, the court's findings of fact are established for the purposes of this appeal.

2. The clerk entered a default against Jocovic on January 9, 1986. Plaintiffs subsequently filed a request for default judgment which was entered July 15, 1986. Jocovic has not appealed.

Before it was heard, however, the district court dismissed the action against Banco BCH in accordance with the stipulation filed pursuant to Fed.R.Civ.P. 41. The trial proceeded against the remaining defendants[3] and on May 12, 1987, the district court entered judgment for Security Pacific. Derderian timely appealed.

## II

## DISCUSSION

Jurisdiction of the district court over this action depends upon an interplay of removal jurisdiction and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1330, 1602 *et seq.*, which immunizes foreign states and their instrumentalities from the jurisdiction of United States courts unless the matter falls within one of the statutory exceptions to immunity.

### A. Removal Jurisdiction

When, after removal,[4]

a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction over the case had it been filed in that court.

*Sorosky v. Burroughs Corp.*, 826 F.2d 794, 798 (9th Cir.1987) (quoting *Grubbs v. General Electric Credit Corp.*, 405 U.S. 699, 702, 92 S.Ct. 1344, 1347, 31 L.Ed.2d 612 (1972)).

We review the existence of subject matter jurisdiction independently, without deference to the district court's determination of this issue. *Gerritsen v. de la Madrid Hurtado*, 819 F.2d 1511, 1515 (9th Cir. 1987). We conclude that the district court lacked jurisdiction to enter a judgment in this matter.

28 U.S.C. § 1330(a) provides that district courts have original jurisdiction without regard to the amount in controversy of any nonjury civil action against a foreign state "as to any claim for relief in personam *with respect to which the foreign state is not entitled to immunity.*" 28 U.S.C. § 1330(a) (emphasis added). "If one of the specified exceptions to sovereign immunity applies, a federal district court may exercise subject-matter jurisdiction under § 1330(a); but if the claim does not fall within one of the exceptions, federal courts lack subject-matter jurisdiction" and personal jurisdiction. *Verlinden*, 461 U.S. at 489, n. 14, 103 S.Ct. at 1969, n. 14.

■ Thus, federal jurisdiction over both foreign and non-foreign parties does not attach until it is determined that the foreign sovereign lacks immunity from jurisdiction under the provisions of the FSIA. *Frolova v. Union of Soviet Socialist Republics*, 761 F.2d 370, 372–73 (7th Cir. 1985). Where sovereign immunity exists, the court is without jurisdiction over the action just as it would be in a case filed in federal district court under 28 U.S.C. § 1332 that did not have diverse parties, or one filed under 28 U.S.C. § 1331 absent a claim arising under federal law. It is essential, therefore, as a preliminary matter in cases in which sovereign immunity is claimed, that the district court decide the question of immunity. *Verlinden*, 461

---

**3.** In its Findings of Fact and Conclusions of Law, issued May 19, 1987, the district court stated that it had jurisdiction pursuant to 28 U.S.C. § 1330 and 1602–11. This finding would seem to indicate that the district court implicitly denied Banco BCH's claim of sovereign immunity. In the stipulation, however, the parties agreed that neither Banco BCH nor the United States of Mexico "submits itself to the jurisdiction of this Court or waives the sovereign immunity to which each are entitled." Neither party raised the issue of jurisdiction on this appeal. On September 7, 1988, this court issued an order to show cause directing the parties to ad-

dress the question whether the appeal should be dismissed for lack of jurisdiction.

**4.** Under the FSIA, "in view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area" H.R.Rep. No. 94–1487, 94th Cong. 2d Sess. 32, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6604, 6631, foreign states are guaranteed the right to remove any civil action from a state court to a federal court. 28 U.S.C. § 1441(d); *Verlinden*, 461 U.S. at 489, 103 S.Ct. at 1969.

U.S. at 493–94, 103 S.Ct. at 1971–72.[5] The FSIA

must be applied by the district courts in every action against a foreign sovereign, since subject-matter jurisdiction in any such action depends on the existence of one of the specified exceptions to foreign sovereign immunity, 28 U.S.C. § 1330(a). At the threshold of every action in a district court against a foreign state, therefore, the court must satisfy itself that one of the exceptions applies—and in doing so it must apply the detailed federal law standards set forth in the Act.

*Verlinden,* 461 U.S. at 493–94, 103 S.Ct. at 1971 (footnote omitted); *see also Amerada Hess,* —— U.S. at ——, 109 S.Ct. at 687.[6]

B. Foreign Sovereign Immunity

  1. The Foreign Sovereign Immunities Act

■ The FSIA provides the sole basis for subject matter jurisdiction in cases involving foreign sovereigns. *Amerada Hess,* —— U.S. at ——, 109 S.Ct. at 687; *McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 586–87 (9th Cir.1983) *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed. 2d 182 (1984). The purpose of the FSIA "is to provide when and how parties can maintain a lawsuit against a foreign state or its entities in the courts of the United States and to provide when a foreign state is entitled to sovereign immunity." H.R.Rep. No. 94–1487, 94th Cong., 2d Sess. 6, *reprinted in* 1976 U.S.Code Cong. & Admin. News 6604 (1976). It was also intended to

provide uniformity of decision and to conform to international law. *McKeel,* 722 F.2d at 586–87.

The Foreign Sovereign Immunities Act (FSIA) provides that the district courts have original subject matter jurisdiction "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity" under the Act or under any applicable international agreement. 28 U.S.C. § 1330(a). Personal jurisdiction over a foreign state exists "as to every claim for relief over which the district courts have [subject-matter] jurisdiction where service has been made under [the Act]."[7] 28 U.S.C. § 1330(b). Thus, sovereign immunity is not merely a defense under the FSIA. Its absence is a jurisdictional requirement. *MOL, Inc. v. Peoples Republic of Bangladesh,* 736 F.2d 1326, 1328 (9th Cir.), *cert. denied,* 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984); *Olsen by Sheldon v. Government of Mexico,* 729 F.2d 641, 644 (9th Cir.), *cert. denied,* 469 U.S. 917, 105 S.Ct. 295, 83 L.Ed.2d 230 (1984); *see also Maritime Int'l Nominees Establishment v. Republic of Guinea,* 693 F.2d 1094, 1099 (D.C.Cir.1982) ("The Act thereby connects the issue of subject matter jurisdiction to the issue of sovereign immunity: the absence of immunity is a condition to the presence of subject matter jurisdiction."), *cert. denied,* 464 U.S. 815, 104 S.Ct. 71, 78 L.Ed.2d 84 (1983). Accordingly, the existence of sovereign immunity deprives the court of both subject matter and personal jurisdiction.

---

**5.** Given the serious jurisdictional consequences, this court has recognized the importance of the district court's finding on immunity under the FSIA. *Compania Mexicana de Aviacion, S.A. v. United States Dist. Court,* 859 F.2d 1354, 1358 (9th Cir.1988) (denial of sovereign immunity is an appealable interlocutory order).

**6.** Even if the foreign state does not enter an appearance, a district court still must determine that immunity is unavailable under the Act. *Verlinden,* 461 U.S. at 494 n. 20, 103 S.Ct. at 1971 n. 20. When a district court finds that a foreign sovereign is immune, 28 U.S.C. § 1447(c) mandates remand because the case "was removed improvidently and without jurisdiction." Section 1447(c) applies because the

district court is without jurisdiction under 28 U.S.C. § 1330(a). The foreign state has the right to remove to enable the district court to determine the issue of immunity.

**7.** We note that Banco BCH was served with a summons and complaint sent by certified mail from the attorneys for Security Pacific to Banco BCH's branch office in Tijuana, Mexico, pursuant to California Code of Civil Procedure § 415.30. The FSIA requires that service upon an agency or instrumentality of a foreign state be made according to the provisions of 28 U.S.C. § 1608(b). Because we find that subject matter jurisdiction was lacking, we do not reach the issue of lack of personal jurisdiction resulting from failure to serve Banco BCH properly.

2. Subject matter jurisdiction under § 1330(a).

The FSIA presumes immunity. *West v. Multibanco Comermex*, 807 F.2d 820, 824 (9th Cir.), *cert. denied*, 482 U.S. 906, 107 S.Ct. 2483, 96 L.Ed.2d 375 (1987). Jurisdiction is limited to cases in which the foreign state is not entitled to immunity either under one of the enumerated exceptions contained in 28 U.S.C. § 1605–1607, or under any applicable international agreement. *West*, 807 F.2d at 824; *McKeel*, 722 F.2d at 587. If the claim does not fall within one of the exceptions, the court cannot entertain the action and must dismiss the action against the foreign state for lack of jurisdiction. *Maritime Int'l Nominees*, 693 F.2d at 1099.

■ In this matter, Security Pacific contends that Banco BCH was not entitled to immunity because it was engaged in a commercial activity elsewhere that caused a direct effect in the United States. This contention lacks merit.

Under the FSIA, exceptions to immunity include any action

> based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2).[8] "Commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. 28 U.S.C. § 1603(d).

Section 1605(a)(2) is given a very restrictive interpretation; it requires that either an injury or an act occur in the United States for jurisdiction to exist. *Compania Mexicana de Aviacion*, 859 F.2d at 1360; *Yugoexport, Inc. v. Thai Airways Int'l, Ltd.*, 749 F.2d 1373, 1375 (9th Cir.1984), *cert. denied*, 471 U.S. 1101, 105 S.Ct. 2326, 85 L.Ed.2d 844 (1985) (*citing Australian Government Aircraft Factories v. Lynne*, 743 F.2d 672 (9th Cir.1984), *cert. denied*, 469 U.S. 1214, 105 S.Ct. 1189, 84 L.Ed.2d 335 (1985)).

The commercial activity abroad must be the cause of the direct effect in the United States. *Texas Trading & Milling Corp. v. Federal Republic of Nigeria*, 647 F.2d 300, 313 (2d Cir.1981) (where the parties agreed that money owing on a contract was to be collected in the United States, the failure to pay creates an effect in the United States), *cert. denied*, 454 U.S. 1148, 102 S.Ct. 1012, 71 L.Ed.2d 301 (1982). In addition, the legislative history of the FSIA indicates Congress' intent that the "substantial" effect in the United States occur "as a direct and foreseeable result of the conduct outside the territory" of the United States. 1976 U.S.Code Cong. & Admin.News at 6618 (citing Restatement (Second) of Foreign Relations Law of the United States § 18 (1965)); *See also Callejo v. Bancomer, S.A.*, 764 F.2d 1101 (5th Cir.1985).

**8.** The other exceptions are (1) waiver of immunity by the foreign state; (3) a taking in violation of international law; (4) succession to property in the United States; (5) tort damage occurring in the United States and (6) maritime liens based upon a commercial activity of the foreign state. 28 U.S.C. § 1605. Security Pacific has argued that exceptions (3) and (5) also apply in this case. Exception (3) is clearly inapplicable. Security Pacific has introduced no evidence to support its notion that conversion is a violation of international law. *Cf. Filartiga v. Pena–Irala*, 630 F.2d 876 (2d Cir.1980) (torture is a violation of the law of nations, giving federal courts jurisdiction under 28 U.S.C. § 1350). Furthermore, this exception requires that the property or property exchanged for it be present in the United States "in connection with a commercial activity carried on in the United States by the foreign state." As discussed below, Banco BCH is not engaged in any commercial activity in the United States.

The fifth exception applies to non-commercial torts and requires not only that personal injury or property damages occur in the United States, but that the tortious act or omission occur here. *Amerada Hess*, —— U.S. at ——–——, 109 S.Ct. at 688–91. (the exception in section 1605(a)(5) covers only torts occurring within the territorial jurisdiction of the United States); *Olsen*, 729 F.2d at 645–46; *Frolova v. Union of Soviet Socialist Republics*, 558 F.Supp. 358, 362 (N.D.Ill. 1983) (the tort exception is directed primarily at problems like traffic accidents of foreign diplomats in the United States) *aff'd* 761 F.2d 370 (7th Cir.1985). Security Pacific has not alleged any act or omission by Banco BCH in the United States.

Cases which have found a direct effect in the United States involve, among other things, performance in the United States of some part of a commercial agreement between the parties. *See Meadows v. Dominican Republic,* 817 F.2d 517, 523 (9th Cir.) (direct effects in the United States when the Dominican Republic failed to perform its contract to pay commissions to Meadows in the United States), *cert. denied,* — U.S. —, 108 S.Ct. 486, 98 L.Ed. 2d 485 (1987); *Texas Trading,* 647 F.2d at 306–12 (Nigeria's breach of cement contracts and letter of credit payable in New York caused direct effect in United States).

No direct effects have been found, however, where the contacts with the United States, although substantial, were not direct and foreseeable or were purely fortuitous "in that they depended solely on the fact that the injured persons happened to be American". *Callejo,* 764 F.2d at 1111 (citing *Australian Government Aircraft Factories v. Lynne,* 743 F.2d 672, 674–75 (9th Cir.1984), *cert. denied,* 469 U.S. 1214, 105 S.Ct. 1189, 84 L.Ed.2d 335 (1985); *Harris v. VAO Intourist,* 481 F.Supp. 1056, 1065 (E.D.N.Y.1979); *Upton v. Empire of Iran,* 459 F.Supp. 264, 266 (D.D.C.1978), *aff'd mem.,* 607 F.2d 494 (1979); *Maritime International,* 693 F.2d at 1111).

The dispositive question is whether the effect is sufficiently direct and sufficiently in the United States that Congress would have wanted an American court to hear the case. *Texas Trading,* 647 F.2d at 313.

Banco's commercial activities in Tijuana did not cause a direct effect in the United States.[9] In this case, Banco BCH accepted a deposit in Tijuana into an account held by a Mexican national. It had no direct or indirect transactions with Security Pacific. The record does not indicate that Banco BCH knew or was on notice regarding the sources of the deposited funds. Banco BCH did not cause an injury in the United States; the injury to Security Pacific resulted from the earlier theft and forgery of a check by Derderian and Jocovic. The commercial activity of Banco BCH was subsequent to and relatively remote from the direct injury and as such is insufficient to bring Banco BCH before United States courts. Otherwise, all foreign sovereign banking institutions would be subject to United States jurisdiction if they merely accepted funds for deposit by account holders, when, unknown to the bank, those funds were obtained wrongfully or illegally in the United States. Such a result would impose jurisdiction in situations which lack the substantial and direct effect that Congress intended be present to confer jurisdiction under the Foreign Sovereign Immunities Act.[10]

■ Our conclusion is reinforced by the fact that the requirement of a "direct effect" incorporates the minimum contacts standards of *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945).[11] *See Thos. P. Gonzalez Corp. v. Consejo Nacional,* 614 F.2d 1247,

**9.** There is no dispute that Banco BCH is an instrumentality of a foreign state and is engaged in commercial activity as defined by the FSIA. Banco BCH is owned by the government of Mexico, making it an instrumentality of a foreign sovereign within the meaning of 28 U.S.C. § 1603(a). *See West,* 807 F.2d at 823 (noting that on September 1, 1982, the Government of Mexico nationalized the entire private banking system making defendant banks instrumentalities of the Mexican government). Banco BCH is engaged in banking, not an activity which is "peculiarly within the realm of governments" but one which may be performed by private parties. *Id.* at 825. *See Callejo,* 764 F.2d at 1108 n. 6 (If an activity is of a type that a private person would customarily engage in for profit, it is clearly commercial).

**10.** Security Pacific's reliance on *Cooper v. Union Bank,* 9 Cal.3d 371, 507 P.2d 609, 107 Cal.Rptr. 1

(1973), is misplaced. *Cooper* holds only that payor and collector banks on forged negotiable instruments are liable to the true owner out of total bank funds. It does not prove an alternative to the FSIA for acquiring jurisdiction over claims against a foreign sovereign. *See McKeel,* 722 F.2d at 586–87 (FSIA provides the exclusive basis for jurisdiction over a foreign sovereign). Furthermore, *Cooper* only discusses the liability of banks negotiating a forged instrument. *Cooper* is therefore inapplicable to Banco BCH under these facts.

**11.** According to the legislative history, the FSIA clauses in section 1605(a) were intended to incorporate the due process standards of *International Shoe.* 1976 U.S.Code Cong. & Admin. News at 6612.

1255 & n. 5 (9th Cir.1980) (the requirements of minimum jurisdictional contacts and adequate notice are embodied in 28 U.S.C. § 1330(b)). A finding of "direct effects," then, also must comport with the "traditional notions of fair play and substantial justice" which determine the due process limits of personal jurisdiction. *International Shoe,* 326 U.S. at 316, 66 S.Ct. at 158 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940); *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984).

Where a non-resident defendant has "substantial" or "continuous and systematic" contacts with the forum state, jurisdiction exists even if the cause of action is unrelated to the defendant's forum activities. *Shute v. Carnival Cruise Lines,* 863 F.2d 1437, 1440 (9th Cir.1988) (citing *Fields v. Sedgwick Associated Risks, Ltd.,* 796 F.2d 299, 301 (9th Cir.1986)); *Data Disc, Inc. v. Systems Technology Assoc., Inc.,* 557 F.2d 1280 (9th Cir.1977). Where the non-resident's activities are not sufficiently pervasive to create general jurisdiction, we apply a three-part test to determine whether the exercise of specific jurisdiction comports with due process: (1) the defendant must have done some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must arise out of the defendant's forum-related activities; and (3) the exercise of jurisdiction must be reasonable. *Shute,* 863 F.2d 1441.

There are insufficient contacts in this case for the exercise of either general or specific jurisdiction over Banco BCH. Banco BCH has no branch offices or representational offices within the United States and is not licensed to do business in any state of the United States; it has no employees or agents in the United States. *See Helicopteros Nacionales,* 466 U.S. at 416–19, 104 S.Ct. at 1873–75 (a contract negotiating session in Houston; the purchase of helicopters, spare parts and accessories in Fort Worth; training of pilots and management in Fort Worth; and $5 million

in payments from a bank in Houston are insufficient to give Texas courts jurisdiction over a Colombian corporation owning a helicopter which crashed in Peru). Banco BCH has availed itself of the privilege of maintaining investment bank accounts in California. However, Security Pacific's cause of action does not "arise out of" Banco BCH's California investments. To the extent that Security Pacific had any claim against Banco BCH, it arose out of Banco BCH's act of accepting a deposit into an account in its Tijuana branch. Therefore, under a minimum contacts analysis, Banco BCH's actions did not cause a "direct effect" in the United States, as defined by the FSIA.

## CONCLUSION

Banco BCH was not engaged in commercial activities that had a direct effect in the United States. Therefore, Banco BCH is an immune foreign sovereign under the FSIA and the district court lacked original jurisdiction over this action. 28 U.S.C. § 1330(a). Accordingly, the judgment is reversed. This matter is remanded to the district court with directions to remand the remaining causes of action to the Los Angeles Superior Court.