36 F.3d 1274
 30 Fed.R.Serv.3d 729
 SCHLUMBERGER INDUSTRIES, INCORPORATED, Plaintiff-Appellant,
v.
NATIONAL SURETY CORPORATION; Fireman's Fund Insurance
Company; the Travelers Indemnity Company; the Globe
Indemnity Company; American Motorists Insurance Company;
Puritan Insurance Company; Prudential Reinsurance Company;
United States Fire Insurance Company; Royal Insurance
Company of America; Jackson & Companies; the American
Insurance Company, Defendants-Appellees (Two Cases).
 Nos. 92-2626, 93-1086.
 United States Court of Appeals,
Fourth Circuit.
 Argued March 10, 1994.
Decided Oct. 7, 1994.
 
 ARGUED: John Edward Heintz, Howrey & Simon, Washington, DC, for appellant. Mary Kay Vyskocil, Simpson, Thacher & Bartlett, New York City, for appellees. ON BRIEF: Wendy M. Anderson, Howrey & Simon, Washington, DC, for appellant. John Bowman McLeod, Haynsworth, Marion, McKay & Guerard, Greenville, SC, for appellee Travelers Indemn. Co.; Lawrence A. Levy, Gary Dennis Centola, Rivkin, Radler & Kramer, Uniondale, NY; Elizabeth Scott Moise, Nelson, Mullins, Riley & Scarborough, Columbia, SC, for appellees Nat. Sur. Corp., Fireman's Fund Ins. Co., and American Ins. Co.; John Ephraim Johnston, Leatherwood, Walker, Todd & Mann, Greenville, SC, for appellees Globe Indem. Co. and Royal Ins. Co.; George Bartlett Hall, Jr., Julia A. Dietz, Phelps Dunbar, New Orleans, LA; Mason Anderson Goldsmith, Love, Thornton, Arnold & Thomason, Greenville, SC, for appellee Jackson & Companies; John Chesney, Drinker, Biddle & Reath, Philadelphia, PA; Steven Bennett, Drinker, Biddle & Reath, Washington, DC, for appellee American Motorists Ins. Co.; James Covington Parham, Jr., Marshall Winn, Wyche, Burgess, Freeman & Parham, P.A., Greenville, SC, for appellees American Motorists Ins. Co. and Puritan Ins. Co.; Kimball Ann Lane, Craig Brown, Frances J. Phillips, Adams, Duque & Hazeltine, New York City, for appellee Puritan Ins. Co.; Karen L. Douglas, Michael Raymond Gregg, Merlo, Chapello & Douglas, Ltd., Chicago, IL; Paul J. Foster, Jr., Foster, Plaxco & Foster, Greenville, SC, for appellee Prudential Reinsurance Co.; Robert J. Kelly, Pamela Tanis, McElroy, Deutsch & Mulvaney, Morristown, NJ; Wilburn Brewer, Marcus A. Manos, Nexsen, Pruet, Jacobs & Pollard, Columbia, SC, for appellee U.S. Fire Ins. Co.
 Before RUSSELL, Circuit Judge, SPROUSE, Senior Circuit Judge, and BRITT, United States District Judge for the Eastern District of North Carolina, sitting by designation.
 Vacated and remanded with instructions by published opinion. Judge DONALD RUSSELL wrote the opinion, in which Senior Judge SPROUSE and District Judge BRITT joined.
 OPINION
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 Schlumberger Industries, Inc., appeals from a decision of the United States District Court for the District of South Carolina, granting summary judgment in two consolidated cases to the appellee insurance companies. After hearing initial oral argument, we asked the parties to provide supplemental briefing and present argument on the question of the propriety of the district court's subject matter jurisdiction. We conclude, for the reasons recited below, that subject matter jurisdiction was lacking, and we order relief accordingly.
 
 I.
 
 2
 From 1956 to 1977, Sangamo Weston, Inc. ("Sangamo"), predecessor in interest to appellant Schlumberger Industries, Inc. ("Schlumberger"), both of which are Delaware corporations with principal places of business in Georgia, manufactured capacitors at its plant in Pickens County, South Carolina. In the mid-1970's, the South Carolina Department of Health and Environmental Control ("DHEC") and the United States Environmental Protection Agency ("EPA") determined that soil and water at certain locations were contaminated by polychlorinated biphenyls and volatile organic compounds, all "hazardous substances" subject to regulation under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"), 42 U.S.C. Secs. 96019675.[1] Sangamo was notified that it was a potentially responsible party under CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a), for such contamination. Rather than have DHEC and EPA conduct the cleanup and then hold it liable for their "response costs" under CERCLA,[2] Sangamo elected to enter into a consent agreement, under which Sangamo was to perform the cleanup at its own expense, subject to EPA oversight.
 
 II.
 
 3
 In 1988, following Sangamo's completion of the cleanup to EPA's satisfaction, two insurers, National Surety Corporation ("National") and American Insurance Company ("American"), brought a declaratory judgment suit in federal district court in South Carolina (the "Anderson Division case") against Sangamo to determine their rights and responsibilities for Sangamo's cleanup costs under comprehensive general liability ("CGL") insurance policies they had issued to Sangamo.[3] National is incorporated in, and has its principal place of business in, Illinois; American is incorporated in New Jersey and has its principal place of business in California. Thus, the district court had complete diversity jurisdiction over this case. See 28 U.S.C. Sec. 1332(c)(1).
 
 
 4
 Approximately one month after the Anderson Division case was filed, Sangamo filed an analogous declaratory judgment suit in South Carolina state court (the "Greenville County case") against numerous insurance companies, including National and American, to determine the rights and responsibilities of the insurance companies for cleanup costs under CGL policies they had issued to Sangamo.[4] Two of the insurance companies in the Greenville County case, The Globe Indemnity Company and Prudential Reinsurance Company, were incorporated in Delaware, as was Sangamo (and is Schlumberger). As a result, there was not complete diversity in the Greenville County case. See 28 U.S.C. Sec. 1332(c)(1). Nevertheless, one named defendant in the Greenville County case, The Insurance Company of Ireland ("ICI"), removed the Greenville County case to federal district court pursuant to 28 U.S.C. Sec. 1441(d).
 
 
 5
 Sangamo voluntarily dismissed ICI and, based upon the lack of complete diversity and any other type of subject matter jurisdiction, sought to have the Greenville County case remanded to state court. By Order dated August 11, 1989, the district court denied the motion and retained the case in district court. J.A. 72-73. Sangamo also moved to dismiss the Anderson Division case on the ground that its other insurers were necessary and indispensable parties to the case, and joinder of these parties would destroy complete diversity, the court's only basis for subject matter jurisdiction over the Anderson Division case. In light of its decision to retain the Greenville County case in federal court, the district court denied this motion as well. The court, noting that both the Anderson Division case and the Greenville County case sought declaratory relief regarding the insurance companies' liability under CGL policies for Sangamo's cleanup costs, consolidated the two cases.
 
 
 6
 Subsequently, the district court granted summary judgment for the insurers, holding that CGL coverage did not extend to CERCLA response costs. Sangamo appealed that decision. The panel voted initially to certify the question of liability under the CGL policies to the Supreme Court of South Carolina. Subsequently, however, we directed the parties to address the possibility of a defect in the district court's subject matter jurisdiction.[5] We now conclude that the district court's exercise of subject matter jurisdiction was defective.
 
 III.
 
 7
 ICI removed the Greenville County case to federal district court pursuant to a provision of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. Secs. 1330, 1332(a)(2)-(4), 1391(f), 1441(d), 1602-1611. The FSIA's removal provision, 28 U.S.C. Sec. 1441(d), states:
 
 
 8
 Any civil action brought in a State court against a foreign state as defined in section 1603(a) of this title may be removed by the foreign state to the district court of the United States embracing the place where such action is pending. Upon removal the action shall be tried by the court without jury....
 
 
 9
 Although never stated in the record, because there was a lack of complete diversity and no federal question was raised, subject matter jurisdiction in the district court as to Sangamo's claims against ICI would have to have been premised upon either removal jurisdiction under section 1441(d), or the FSIA's original jurisdiction provision, 28 U.S.C. Sec. 1330(a),[6] which states:
 
 
 10
 The district courts shall have original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605-1607 of this title or under any applicable international agreement.
 
 
 11
 The problem arises with respect to the district court's subject matter jurisdiction over the claims against the defendants in the Greenville County case other than ICI. Jurisdiction over the claims against these parties could only have been pendent party jurisdiction[7] and, under the Supreme Court's opinion in Finley v. United States, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), the district court lacked proper pendent party jurisdiction.
 
 
 12
 In Finley, the Court addressed whether a tort plaintiff who brought claims in a district court against the federal government under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Sec. 1346(b), could also bring state law claims in the same case against private parties. Because the private parties were not of completely diverse citizenship from the plaintiff, the district court's only possible basis for subject matter jurisdiction as to the state law claims against the private parties would have been by virtue of the fact that they were pendent to the FTCA claim against the government. The Court held that the district court could not exercise such pendent party jurisdiction,[8] stating:The FTCA, Sec. 1346(b), confers jurisdiction over "civil actions on claims against the United States." It does not say "civil actions on claims that include requested relief against the United States," nor "civil actions in which there is a claim against the United States"--formulations one might expect if the presence of a claim against the United States constituted merely a minimum jurisdictional requirement, rather than a definition of the permissible scope of FTCA actions. Just as the statutory provision "between ... citizens of different States" has been held to mean citizens of different States and no one else, see [Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) ], so also here we conclude that "against the United States" means against the United States and no one else.
 
 
 13
 490 U.S. at 552, 109 S.Ct. at 2008 (footnote omitted). The Court also noted the fact that the FTCA was drafted well before the Court's decision in United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); thus, to whatever extent the plain language of the statute seemed consistent with a grant of pendent party jurisdiction, it was unlikely that Congress intentionally chose the language for that purpose. See Finley, 490 U.S. at 555, 109 S.Ct. at 2010. The Court thus found it appropriate to read the jurisdiction-granting statute narrowly and concluded that Congress did not intend to confer pendent party jurisdiction under the FTCA.
 
 
 14
 We have never squarely addressed the status of pendent party jurisdiction under any of the various federal jurisdictional statutes following Finley. See In re Secretary of Dep't of Crime Control and Public Safety, 7 F.3d 1140, 1144 n. 2 (4th Cir.1993) ("Under Finley, we think there is a substantial question whether[, in a section 1983 case,] the district court could properly have invoked either its pendent jurisdiction or its ancillary jurisdiction to entertain [plaintiff's] state-law claim against [a pendent party]."), cert. denied sub nom. Barfield v. Secretary, N.C. Dep't of Crime Control, --- U.S. ----, 114 S.Ct. 2106, 128 L.Ed.2d 667 (1994). We now consider the vitality of pendent party jurisdiction under the FSIA in Finley's wake.[9]
 
 IV.
 A.
 
 15
 ICI removed the Greenville County case to federal court. If jurisdiction over ICI was proper under the FSIA's original jurisdiction provision, 28 U.S.C. Sec. 1330(a), and if section 1330(a) allows for pendent party jurisdiction, then jurisdiction over Sangamo's claims against the domestic insurers was proper in the court below.[10]
 
 
 16
 Finley's holding, however, clearly dictates the lack of pendent party jurisdiction under section 1330(a). Section 1330(a) grants to the district courts original jurisdiction over "civil action[s] against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." This section, like section 1346(b) in Finley, extends subject matter jurisdiction only as to claims brought against a foreign sovereign and not to claims against other parties. Thus, while ICI was in the case, the district court lacked subject matter jurisdiction as to the claims brought by Sangamo against all parties except for ICI. When ICI was dismissed, the district court lacked subject matter jurisdiction as to any of the claims in the Greenville County case.
 
 
 17
 The Ninth Circuit reached a contrary conclusion in Teledyne, Inc. v. Kone Corp., 892 F.2d 1404 (9th Cir.1989).[11] The court there relied heavily upon the fact that the FSIA, as opposed to the FTCA, was drafted well after the concept of pendent claim jurisdiction had been enunciated by the Supreme Court in Gibbs. This, the court indicated, lent support to the idea that Congress made intentional use of the phrase "civil action" in the FSIA, aware that it would be interpreted to mean the "entire case." While the difference in timing does indeed lend support to the Teledyne, Inc. court's suggestion that Congress intended "civil action" to mean "entire case," we reject, for the following reasons, the Teledyne, Inc. court's conclusion.
 
 
 18
 The Court in Finley emphasized that the determination of whether Congress intended a particular jurisdictional statute to confer pendent party jurisdiction must focus upon the language of the statute in question.[12] We consider then the phrasing, used in section 1330(a), "civil action against a foreign state ... as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity." This phrasing is almost identical to the phrasing "civil actions on claims against the United States," which the Court in Finley found did not confer pendent party jurisdiction. Significantly, section 1330(a) does not contain language like "civil actions on claims that include requested relief against the United States," or "civil actions in which there is a claim against the United States," which Finley described as "formulations one might expect if the presence of a claim against the United States constituted merely a minimum jurisdictional requirement, rather than a definition of the permissible scope of FTCA actions." 490 U.S. at 552, 109 S.Ct. at 2008. Thus, whatever implication we might take from the phrase "civil action against a foreign state" standing alone,[13] the subsequent use of the language, "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity," convinces us that Congress did not intend for section 1330(a) to confer pendent party jurisdiction.
 
 
 19
 Examination of the legislative history underlying section 1330(a) confirms our conclusion. In undertaking a section-by-section analysis of the FSIA, a House Report explains, with regard to section 1330(a): "The jurisdiction [conferred by section 1330(a) ] extends to any claim with respect to which the foreign state is not entitled to immunity." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 13, reprinted in 1976 U.S.C.C.A.N. 6604, 6611 (emphasis added).[14]
 
 
 20
 We conclude that section 1330(a) does not support pendent party jurisdiction. As a result, we need not determine whether section 1330(a) supported jurisdiction over ICI.[15] That question is irrelevant: even if the district court had jurisdiction under section 1330(a) as to Sangamo's claim against ICI, section 1330(a) did not confer jurisdiction over Sangamo's claims against the other defendants. We therefore conclude that the district court erred in asserting jurisdiction over Sangamo's claims against the domestic insurers under section 1330(a).
 
 B.
 
 21
 Even if examination of subject matter jurisdiction under section 1441(d), and not section 1330(a), is appropriate, see supra note 10, we would adhere to our conclusion regarding the lack of subject matter jurisdiction as to Sangamo's cleanup claims against the domestic insurers. First, it is possible that jurisdiction under section 1441(d) is coextensive with jurisdiction under section 1330(a). If, indeed, that is the case, then, for the reasons given in Section IV.A., supra, there is no pendent party jurisdiction under section 1441(d).[16]
 
 
 22
 Even if, however, jurisdiction under section 1441(d) is broader than that under section 1330(a) and allows, in appropriate cases, for some form of pendent party jurisdiction,[17] we think that the district court's exercise of pendent party jurisdiction here was without basis. The legislative history underlying section 1441(d) explains:
 
 
 23
 In view of the potential sensitivity of actions against foreign states and the importance of developing a uniform body of law in this area, it is important to give foreign states clear authority to remove to a Federal forum actions brought against them in the State courts. New subsection (d) of section 1441 permits the removal of any such action at the discretion of the foreign state, even if there are multiple defendants and some of these defendants desire not to remove the action or are citizens of the State in which the action has been brought.
 
 
 24
 H.R.Rep. No. 1487, 94th Cong., 2d Sess. 32, reprinted in 1976 U.S.C.C.A.N. at 6631. This confirms that section 1441(d)'s sole purpose is to give a nonimmune foreign sovereign defendant access to federal court. This right of removal, moreover, is conferred upon the foreign sovereign to the exclusion of the desires both of the plaintiff and of the other defendants.
 
 
 25
 Here, the foreign sovereign was effectively never in the Greenville County case before the federal district court: Sangamo dismissed it before the district court had even a chance to rule upon ICI's entitlement to foreign sovereign immunity. As a result, no policy of section 1441(d) is furthered by retaining the case in federal court. Following Finley's directive that grants of pendent party jurisdiction be narrowly construed, we conclude that, under these circumstances, remand of the Greenville County case was mandated.
 
 
 26
 The fact that the FSIA's corresponding original jurisdiction does not extend pendent party jurisdiction supports this result. According to our holding above with respect to section 1330(a), Sangamo could not originally have brought its case, with all the domestic insurers as defendants, in federal court. Section 1441(d), if it does confer some form of pendent party jurisdiction, was the only way that the Greenville County case could be heard in federal court. That ICI, the sole basis for access to federal court, departed the case before any of its interests in having the case heard in federal court were, or needed to be, vindicated strongly militates against a conclusion that the district court had jurisdiction over the remainder of the case following ICI's dismissal.
 
 
 27
 Appellees argue that the position we take approves of jurisdictional manipulation on the part of Sangamo in that Sangamo, they argue, unilaterally overrode the interests of the domestic insurers to remain in federal court. We are not persuaded.
 
 
 28
 Once ICI was dismissed from the Greenville County case, there was only minimal diversity, not complete diversity, as required for federal diversity jurisdiction under 28 U.S.C. Sec. 1332(a)(1), Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The Supreme Court has instructed that Congress has conferred diversity jurisdiction with "jealous restriction." City of Indianapolis v. Chase Nat'l Bank, 314 U.S. 63, 76, 62 S.Ct. 15, 20, 86 L.Ed. 47 (1941). While jurisdiction under the FSIA may not have been created with similar "jealous restriction," see Associated Elec. & Gas Ins. Servs., Ltd. v. Texas E. Transmission Corp. (In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.), 15 F.3d 1230, 1239 (3d Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 291, --- L.Ed.2d ---- (1994), that is only because of Congress' desire to accommodate nonimmune foreign sovereigns, see Williams v. Shipping Corp. of India, 653 F.2d 875, 879 (4th Cir.1981) ("Both the statutory language and the legislative history [of the FSIA] evince the congressional decision to achieve uniformity of decisional law in the area of suits against foreign sovereigns."), cert. denied, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982). With respect to parties other than foreign states, we must guard jurisdiction under the FSIA with "jealous restriction." Indeed, were we to allow jurisdiction in the instant case, we would, in effect, allow the domestic insurers to manipulate federal jurisdiction and to evade the jealous restriction with which we must guard both diversity jurisdiction and, at least with respect to parties other than foreign sovereigns, jurisdiction under the FSIA. In short, section 1441(d) is not intended to protect such interests of the domestic insurers; it is intended only to protect the interest of the foreign state to obtain, at its whim, a federal forum.
 
 
 29
 Last, we note that the fact that we are dealing with removal jurisdiction under the FSIA buttresses our conclusion that we should guard jurisdiction here with "jealous restriction." "Because removal jurisdiction raises significant federalism concerns, we must strictly construe removal jurisdiction." Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir.1994). As a result, where "federal [removal] jurisdiction is doubtful, a remand is necessary." Id.
 
 
 30
 We conclude that the court below erred in retaining jurisdiction over the Greenville County case after ICI was dismissed.[18] We emphasize that we do not here decide when, if ever, and, if so, to what extent, pendent party jurisdiction will accrue under section 1441(d). We hold only that where, as here, a purported foreign sovereign defendant who has filed for removal under that section is dismissed from the case before the federal court has had an opportunity otherwise to exert authority over the case, the district court retains no pendent party jurisdiction over the remaining domestic defendants. Under such a circumstance, assuming that no other basis for subject matter jurisdiction over the remaining claims exists, the case must be remanded to state court.[19] Such a remand, by virtue of the foregoing, is mandated in the Greenville County case.
 
 V.
 
 31
 The Anderson Division case is a declaratory judgment suit brought by the National and American insurance companies against Sangamo to determine their rights and responsibilities under CGL policies they issued to Sangamo. As discussed above, Sangamo moved before the district court to dismiss the Anderson Division case for want of subject matter jurisdiction. Its ground for this assertion was that a number of other insurance companies, including The Globe Indemnity Company ("Globe") and Prudential Reinsurance Company ("Prudential Re"), were necessary and indispensable parties to the Anderson Division case under Federal Rule of Civil Procedure 19, yet joinder of Globe and Prudential Re would destroy complete diversity, leaving the district court without any basis for subject matter jurisdiction. The district court denied Sangamo's motion, reasoning that joinder of Globe and Prudential Re was not necessary because both were parties in the Greenville County case, and the Anderson Division case and Greenville County case would be consolidated. See J.A. 71. The district court's decision to consolidate, however, was based upon its erroneous conclusion that it had subject matter jurisdiction over the Greenville County case. Because, in fact, the district court lacked subject matter jurisdiction over the Greenville County case, see Section IV, supra, the district court's consolidation rationale fails. Further, we determine that, as Sangamo contended below, the other insurance companies, including Globe and Prudential Re, were necessary and indispensable parties to the Anderson Division case.
 
 
 32
 Rule 19 sets out separate tests for determining whether a person is "necessary," see Fed.R.Civ.P. 19(a),[20] and "indispensable," see Fed.R.Civ.P. 19(b).[21] Only necessary persons can be indispensable, but not all necessary persons are indispensable. See Fed.R.Civ.P. 19(b). In determining whether a party is necessary and, then, indispensable, the court must consider the practical potential for prejudice in the context of the particular factual setting presented by the case at bar. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).
 
 
 33
 The Seventh Circuit, apparently the only court of appeals to have ruled on the matter, has held that, where multiple insurers cover the insured's same liability for the same time period, all the insurers are indispensable parties to an adjudication as to coverage. Evergreen Park Nursing & Convalescent Home, Inc. v. American Equitable Assurance Co., 417 F.2d 1113 (7th Cir.1969) (absent insurers in fire loss dispute governed by "other insurance" clauses are indispensable parties, even though insurance contracts create separable obligations). But see Brinco Mining Ltd. v. Federal Ins. Co., 552 F.Supp. 1233, 1238-39 (D.D.C.1982) (mere presence of "other insurance" clauses not enough to mandate conclusion of indispensability, and where party insurer could later seek contribution from non-party insurers, if necessary, the non-party insurers were not indispensable); Special Jet Servs., Inc. v. Federal Ins. Co., 83 F.R.D. 596, 599-600 (W.D. Pa.1979) (where insured brought suit against one insurer, other insurer whose policy also may have covered some of the liability at issue was not necessary party).[22] We need not decide that question here, however, because the case at bar presents an even stronger case for indispensability. Were the district court allowed to proceed with less than all of Sangamo's insurers as parties, there is a practical possibility for prejudice to Sangamo that is not present in the cases where the insurers cover the same liability for the same time period: Sangamo could be "whipsawed," Lumbermens Mut. Casualty Co. v. Connecticut Bank & Trust Co., N.A., 806 F.2d 411, 414 (2d Cir.1986), and wind up with less than full coverage even though it was legally entitled to full coverage.
 
 
 34
 This potential for "whipsaw" arises from the fact that, as noted above in note 4, different insurance policies issued to Sangamo covered different policy periods, and it manifests itself in three ways, based upon the three steps that a court presiding over some aspect of the controversy at hand would be expected to undertake. First, a court must determine, as a matter of law, whether the CGL policies issued to Sangamo provide any coverage at all for the monies expended by Sangamo on cleanup costs. Second, assuming the answer to the first inquiry to be affirmative, a court would next have to determine, also as a matter of law, what, under the CGL policies, constituted the "trigger of coverage" under the terms of the policies, i.e., what act or development is required in order for coverage under the policies to attach. Third, a court would have to determine, as a matter of fact, at what point in time the "trigger of coverage" occurred. City of Littleton v. Commercial Union Assurance Co., 133 F.R.D. 159, 164 (D. Colo.1990) (facts similar to those presented here).
 
 
 35
 If two courts handle different aspects of the case separately, the possibility of inconsistent judgments arises. In particular, different interpretations of law as to the first two inquiries, or different findings of fact as to the last inquiry, will result in inconsistent judgments. Cf. Lumbermens Mut. Casualty Co., 806 F.2d at 415 (where resolution of question of law would determine trigger of coverage, so that different resolutions by different courts with different insurers as parties before them could result in insured receiving less than full coverage, court of appeals affirmed district court's grant of stay pending resolution of issue in concurrent state court action); Liberty Mut. Ins. Co. v. Foremost-McKesson, Inc., 751 F.2d 475 (1st Cir.1985) (same).
 
 
 36
 The potential for prejudice arising from different factual determinations with respect to the third inquiry is, we think, especially pronounced: if all of the insurers are not joined in the same case and instead the matter of when the damage occurred is determined by two different courts, and their determinations differ from one another, Sangamo will receive less than full coverage.[23] Importantly, if the first court determines that the damage occurred during a period of time covered by an insurer only in the second case, Sangamo will be unable to use this finding preclusively against that insurer, for that insurer was not a party to the first case.[24] This potential for factual, as opposed to legal, "whipsaw" argues strongly in favor of having one court adjudicate the entire matter with all the parties before it, and is, we think, sufficient to establish that Sangamo's insurers are all both necessary and indispensable parties to the Anderson Division case.[25] Cf. De Cisneros v. Younger, 871 F.2d 305, 308 (2d Cir.1989) (potential for factual "whipsaw" justified district court's decision to abstain from jurisdiction in favor of state court case).
 
 
 37
 With respect to necessity, Rule 19(a)(1) instructs that a person should be joined in any case where "in the person's absence complete relief cannot be accorded among those already parties." We think it clear that, given the overarching legal and factual issues of when the contamination in question occurred, complete relief cannot be adjudicated in the absence of some of Sangamo's insurers.
 
 
 38
 Having concluded that Globe and Prudential Re are necessary parties and because their joinder would destroy complete diversity, we must determine whether they are "indispensable" parties. We conclude that they are.
 
 
 39
 A Rule 19(b) analysis is not mechanical; rather it is conducted in light of the equities of the particular case at bar. The analysis we undertake is guided by consideration of the following four factors:
 
 
 40
 first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 
 
 41
 Fed.R.Civ.P. 19(b).
 
 
 42
 As discussed in the context of Rule 19(a)(1) above, see 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure Sec. 1604, at 46-47 (2d ed. 1986) (noting that the Rule 19(a)(1) analysis is "closely related to several of the factors mentioned in Rule 19(b)"), with respect to the third factor, it is clear that duplicative litigation would likely result if the Anderson Division case were allowed to proceed in Globe's and Prudential Re's absence. City of Littleton, 133 F.R.D. at 165. Further, the fact that proceeding to judgment in the Anderson Division case might "whipsaw" Schlumberger indicates that, with regard to the first and third factors, respectively, the potential for prejudice for Sangamo is great and that any judgment made in the absence of Globe or Prudential Re will not be adequate. We note, in this regard, that Sangamo is not the plaintiff in the Anderson Division case. Because it did not choose to come to federal court, the potential for prejudice to it weighs that much more heavily in favor of a conclusion of indispensability. Cf. Provident Tradesmens Bank & Trust Co., 390 U.S. at 111, 88 S.Ct. at 739 ("clearly the plaintiff, who himself chose both the forum and the parties defendant, will not be heard to complain about the sufficiency of the relief obtainable against them").
 
 
 43
 The second factor asks that we consider to what extent the judgment in the Anderson Division case could be restricted, or alternate relief otherwise fashioned, so that the prejudice to Sangamo might be lessened or avoided altogether. We recognize that the federal district court's role could be limited to determining, as it already has, whether the CGL policies provide coverage at all under the circumstances presented. The equities, however, counsel against this idea. There is no interest that would be furthered by the entrance of such a partial judgment.[26] A stay pending resolution of the Greenville County case would also be fruitless. The state court will adjudicate the entire case with all the issues before it. When the stay could finally be lifted, there would be nothing left for the federal district court to do.
 
 
 44
 With respect to the fourth factor, we see no reason why the Greenville County case will not provide an adequate alternative forum for the plaintiffs in the Anderson Division case, National and American to have their claims adjudicated. While it is true that National and American are not citizens of South Carolina, neither is Sangamo or Schlumberger. And, of course, the adequacy of the South Carolina court system to rule on issues of South Carolina law cannot be questioned.
 
 
 45
 All of the insurance companies, including Globe and Prudential Re, are indispensable parties to the Anderson Division case; without them that case should not go forward. Their joinder is thus mandated by Rule 19. Their joinder, however, would destroy complete diversity, the district court's only basis for subject matter jurisdiction. The cleanup claims in the Anderson Division case should, therefore, be dismissed.
 
 VI.
 
 46
 The judgment of the district court is vacated. We remand the Greenville County case to the district court with instructions that that court remand the case, pursuant to 28 U.S.C. Sec. 1447(c), to the state court whence it came. We remand the cleanup claims in the Anderson Division case to the district court with instructions that those claims be dismissed without prejudice forthwith.[27]
 
 
 47
 VACATED AND REMANDED WITH INSTRUCTIONS.
 
 
 
 [1]
 See CERCLA Sec. 101(14), 42 U.S.C. Sec. 9601(14) (defining the term "hazardous substance"). That the contaminants are properly classified as hazardous substances is not in dispute
 
 
 [2]
 See CERCLA Sec. 107(a), 42 U.S.C. Sec. 9607(a) (imposing liability for "necessary costs of response" incurred by the United States or by a State); CERCLA Sec. 101(25), 42 U.S.C. Sec. 9601(25) ("The terms 'respond' or 'response' mean[ ] remove, removal, remedy and remedial action...."); CERCLA Sec. 101(23), 42 U.S.C. Sec. 9601(23) (defining the terms "remove" or "removal"); CERCLA Sec. 101(24), 42 U.S.C. Sec. 9601(24) (defining the terms "remedy" or "remedial action")
 
 
 [3]
 In this suit, National and American also sought a declaratory judgment with regard to insurance coverage as to a personal civil suit against Sangamo for damages, which is entitled Carole M. Whitfield, et al. v. Sangamo Weston, Inc., C.A. No. 8:84-3184-17. J.A. 64. The district court stayed further proceedings with respect to the damage claims in Whitfield, and certified its ruling on coverage of cleanup costs pursuant to Federal Rule of Civil Procedure 54(b). The Whitfield claims are not at issue in this appeal
 
 
 [4]
 While the insurance companies in the Anderson Division case, National and American, and the insurance companies in the Greenville County case had all issued CGL policies to Sangamo, the coverage accorded to Sangamo under these policies differed. Different policies covered different time periods, and some of the policies were for "excess coverage," covering any of Sangamo's damages that exceeded its primary coverage for a given year
 
 
 [5]
 In its appeal, Sangamo does not challenge the district court's denial of its motion to dismiss the Anderson Division case and the Greenville County case for lack of subject matter jurisdiction. Because these issues are jurisdictional, however, we examine them sua sponte. E.g., State v. Ivory, 906 F.2d 999, 1000 n. 1 (4th Cir.1990)
 
 
 [6]
 "The courts must learn to accept that, in place of the familiar dichotomy of federal question and diversity jurisdiction, the [FSIA] has created a tripartite division--federal question cases, diversity cases and actions against foreign states." Ruggiero v. Compania Peruana De Vapores "Inca Capac Yupanqui", 639 F.2d 872, 876 (2d Cir.1981) (Friendly, J.)
 
 
 [7]
 As explained above, the district court lacked diversity jurisdiction or any other type of subject matter jurisdiction with respect to the claims against these parties
 
 
 [8]
 The Supreme Court has read Congress' grant of pendent claim jurisdiction, that is, jurisdiction as to state law claims brought against a party against whom federal claims have also been alleged, more broadly. See United Mine Workers v. Gibbs, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Here, however, the issue is pendent party jurisdiction. See Finley, 490 U.S. at 549-50, 109 S.Ct. at 2007 (distinguishing between pendent party and pendent claim jurisdiction)
 We note that, in Finley, 490 U.S. at 549, 109 S.Ct. at 2007, the Supreme Court expressly declined to comment on the viability of constitutional pendent party jurisdiction, i.e., the constitutionality of federal courts asserting jurisdiction as to claims against parties as to whom there is no claim as to which there is an independent constitutional grant of subject matter jurisdiction. The Ninth Circuit has suggested that there is, in fact, no constitutional pendent party jurisdiction. See Teledyne, Inc. v. Kone Corp., 892 F.2d 1404, 1407 (9th Cir.1989). In the instant case, there is minimal diversity between Sangamo and the defendant domestic insurers. Because of that, see id. at 1407-08, and because we in any event conclude that statutory pendent party jurisdiction is lacking in this case, we need not determine the viability of constitutional pendent party jurisdiction here.
 
 
 [9]
 Finley, at least as it bears on the district courts' original jurisdiction, was largely overruled by 28 U.S.C. Sec. 1367. Section 1367, however, was enacted on December 1, 1990, prior to ICI's removal of the Greenville County case to federal court and to ICI's dismissal. Section 310 of the Judicial Improvements Act of 1990, which enacted 28 U.S.C. Sec. 1367, instructs: "The amendments made by this section shall apply to civil actions commenced on or after the date of the enactment of this Act." Pub.L. No. 101-650, Sec. 310(c), 104 Stat. 5089, 5114. Thus, section 1367 has no application to the Greenville County case. In re Secretary of Dep't of Crime Control and Public Safety, 7 F.3d at 1144 n. 2
 
 
 [10]
 We note that, because this case was not brought originally in federal court but was removed there, we normally would examine the federal court's jurisdiction only under the FSIA's removal provision, 28 U.S.C. Sec. 1441(d), not under the FSIA's original jurisdiction provision, 28 U.S.C. Sec. 1330(a). The Supreme Court's decision in Grubbs v. General Elec. Credit Corp., 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972), however, may require that we examine jurisdiction in the court below under section 1330(a). Grubbs held that, where a case which is removed to federal court is seen to completion without objection as to removal, "the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court." Id. at 702, 92 S.Ct. at 1347
 The absence of sovereign immunity is a requirement for jurisdiction under the FSIA. Security Pac. Nat'l Bank v. Derderian, 872 F.2d 281, 284 (9th Cir.1989). Jurisdiction under the FSIA "does not attach until it is determined that the foreign sovereign lacks immunity from jurisdiction under the provisions of the FSIA." Id. at 283. Thus, "[a]t the threshold of every action in a district court against a foreign state, ... the court must satisfy itself that one of the exceptions [to foreign sovereign immunity] applies." Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493-94, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). Indeed, because, under the FSIA, immunity is presumed, Security Pac. Nat'l Bank, 872 F.2d at 285; see Verlinden B.V., 461 U.S. at 493 n. 20, 103 S.Ct. at 1971 n. 20, "[e]ven if the foreign state does not enter an appearance to assert an immunity defense, a district court still must determine that immunity is unavailable under the Act," Verlinden B.V., 461 U.S. at 494 n. 20, 103 S.Ct. at 1971 n. 20. In making a determination as to whether one of the exceptions to sovereign immunity applies, the district court "must apply the detailed federal law standards set forth in the Act." Id. at 494, 103 S.Ct. at 1971.
 For removal to have been proper, then, the court below should have made a specific finding as to ICI's right to sovereign immunity. However, before the district court took any action in the case and before ICI had any real opportunity to claim immunity, Sangamo voluntarily dismissed ICI as a party defendant. After ICI's dismissal, the district court made no finding with respect to ICI's immunity. Instead, in determining that it would retain jurisdiction over the remainder of the case, the district court merely observed, "Sangamo does not dispute that ICI is a foreign sovereign within the meaning of 28 U.S.C. Sec. 1603(a) and (b)...." J.A. 71. This statement is not a finding which meets the FSIA's jurisdictional requirement of a specific finding of no immunity. If it was not, then, despite Sangamo's failure to raise an objection, jurisdiction never properly attached below, and Grubbs requires examination of the district court's jurisdiction in retrospect under section 1330(a). Security Pac. Nat'l Bank, 872 F.2d at 281-82 (applying the Grubbs rule in the context of the FSIA to circumstances nearly identical to those presented here). Because we find no jurisdiction over Sangamo's claims against the domestic insurers premised either upon section 1330(a) or section 1441(d), we need not decide which of these statutes is appropriately relied upon for jurisdiction in the Greenville County case.
 
 
 [11]
 Teledyne, Inc. involved a case that was removed from state to federal court. Therefore, in actuality, section 1441(d) was the jurisdiction-granting statute at issue. However, the Teledyne, Inc. court cited both sections 1330(a) and 1441(d), without distinguishing between the two. Moreover, the court's decision speaks broadly of jurisdiction under the FSIA and its analysis is generally not limited to the jurisdictional scope of section 1441(d)
 We note that the conclusion that section 1330(a) supports pendent party jurisdiction is consistent with the Ninth Circuit's reasoning in Security Pacific National Bank v. Derderian, 872 F.2d 281, 284 (9th Cir.1989). There, as here, a defendant sovereign removed a case to federal district court under 28 U.S.C. Sec. 1441(d). The foreign sovereign moved to dismiss the action against it claiming immunity but, before the district court could act upon the motion, the plaintiff dismissed the foreign sovereign. On appeal, following a judgment for the plaintiff, the Ninth Circuit, following the reasoning outlined in note 10, supra, undertook to examine the district court's jurisdiction under 28 U.S.C. Sec. 1330(a). The court found that the sovereign was entitled to immunity and therefore vacated the judgment in favor of the plaintiff and ordered the case remanded to state court. Presumably, however, were the court to have found that the sovereign was not entitled to immunity, it would have allowed the judgment to stand even though, it appears, the district court's sole source of jurisdiction would have been pendent party jurisdiction.
 We would also note that, in a recent opinion, although it did not squarely address the issue, the Third Circuit did not question the validity of pendent party jurisdiction in a case where jurisdiction was premised upon section 1330(a). See Associated Elec. & Gas Ins. Servs., Ltd. v. Texas E. Transmission Corp. (In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.), 15 F.3d 1230, 1238-42 (3d Cir.1994), petition for cert. denied, --- U.S. ----, 115 S.Ct. 291, --- L.Ed.2d ---- (1994).
 
 
 [12]
 The Court also directed that consideration be made of the " 'posture in which the nonfederal claim is asserted.' " Finley, 490 U.S. at 551, 109 S.Ct. at 2008 (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978)). This does not detain us long for, here, as in Finley,
 [t]he most significant element of "posture" or of "context," [Kroger, 437 U.S.] at 376 [98 S.Ct. at 2404] ... is precisely that the added claims involve added parties over whom no independent basis of jurisdiction exists.... [T]he relationship between [Sangamo's claims against the domestic insurers and its claim against ICI] is one of "mere factual similarity," which is of no consequence since "neither the convenience of the litigants nor considerations of judicial economy can suffice to justify extension of the doctrine of ancillary jurisdiction," 437 U.S., at 376-377, 98 S.Ct. at 2404.
 490 U.S. at 551-52, 109 S.Ct. at 2008.
 
 
 [13]
 We would note that the court in Teledyne, Inc., 892 F.2d at 1409, expressed the view that the mere fact that Congress used the wording "any ... civil action" in the FSIA supported the view that Congress intended both sections 1330(a) and 1441(b) to confer pendent party jurisdiction. We disagree. The Court in Finley held that the FTCA did not confer pendent party jurisdiction in spite of the use of the phrase "civil action." We do not think that the modification of that phrase by the word "any" evinces any clearer congressional intent on the matter. See Ortega v. Schramm, 922 F.2d 684, 692-93 (11th Cir.1991) (no pendent party jurisdiction in section 1983 case even though 28 U.S.C. Sec. 1343(a)(3), confers jurisdiction over "any civil action" brought pursuant to section 1983)
 
 
 [14]
 We note that, before undertaking the section-by-section analysis of the FSIA, the House Report notes that "the [FSIA] prescribes ... the jurisdiction of U.S. district courts in cases involving foreign states." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 12, reprinted in 1976 U.S.C.C.A.N. at 6610 (emphasis added). This statement, taken, as it must be, in the context which it was made, does not necessarily mean that the FSIA was intended to grant the district courts original jurisdiction over cases involving foreign states. Moreover, while that statement and other statements in the FSIA's legislative history regarding jurisdiction may be read as supporting the notion that Congress intended section 1330(a) to support pendent party jurisdiction, see, e.g., id. at 12-13, reprinted in 1976 U.S.C.C.A.N. at 6611 ("Section 1330 provides a comprehensive jurisdictional scheme in cases involving foreign states."); id. at 13, reprinted in 1976 U.S.C.C.A.N. at 6612 ("the jurisdiction of district courts in cases against foreign states is to be without regard to amount in controversy"), we believe the statement quoted in the text to be most telling: only that statement speaks to the "exten[t]" of jurisdiction under section 1330(a) and, with respect thereto, it is unequivocal
 
 
 [15]
 See supra note 10
 
 
 [16]
 Finley, as discussed above, compels the conclusion that section 1330(a) does not afford pendent party jurisdiction. Thus, if jurisdiction under section 1441(d) is coextensive with jurisdiction under section 1330(a), section 1441(d) cannot afford pendent party jurisdiction. Further, if, indeed, section 1441(d) does confer some form of pendent party jurisdiction, then the jurisdiction under the FSIA's original and removal jurisdiction provisions is not coextensive. Compare Teledyne, Inc., supra, 892 F.2d 1404 (indicating, as discussed in note 11, supra, that jurisdiction under sections 1330(a) and 1441(d) is coextensive, and that such jurisdiction is broad enough to encompass pendent party jurisdiction)
 We recognize that, well before Finley, in the context of rejecting the notion that FSIA jurisdiction is not the exclusive jurisdictional basis for a claim brought against a foreign sovereign, we stated: "We find that ... a bifurcated analysis of the jurisdictional sections of the [FSIA] to be unwarranted." Williams v. Shipping Corp. of India, 653 F.2d 875, 880 n. 4 (4th Cir.1981), cert. denied, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982). We then quoted from the Second Circuit's opinion in Ruggiero v. Compania Peruana De Vapores "Inca Capac Yupanqui", 639 F.2d 872, 878 (2d Cir.1981), a sentence describing section 1441(d) as section 1330(a)'s "equivalent on removal." We are also aware of our subsequent statement, also made well in advance of Finley, and in the context of rejecting the notion that it is a jurisdictional prerequisite under the FSIA that a civil action against a foreign state be a nonjury action, that "the jurisdiction of a district court over an action brought against a foreign state is the same whether the action is commenced in federal court or removed from a state court." Houston v. Murmansk Shipping Co., 667 F.2d 1151, 1154 (4th Cir.1982). To the extent that section 1441(d) does afford pendent party jurisdiction, these statements must be read as limited to the contexts in which they were made.
 
 
 [17]
 While the general rule equates removal and original jurisdiction, this is not always the case. See 14A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure Sec. 3721, at 194 (2d ed. 1985) ("Removal jurisdiction varies somewhat from original jurisdiction...."). Indeed, we have spoken of "removal jurisdiction" as a form of subject matter jurisdiction distinct from original jurisdiction. See, e.g., Mulcahey v. Columbia Organic Chemicals Co., 29 F.3d 148, 151 (4th Cir.1994) ("removal jurisdiction raises significant federalism concerns")
 With respect to the FSIA, several factors suggest that Congress intended removal jurisdiction to be broader than original jurisdiction and to confer some form of pendent party jurisdiction. First, the language of section 1441(d) is more accommodating to pendent party jurisdiction than is that of section 1330(a). Section 1441(d) does not include the limiting language "as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity," which is contained in section 1330(a). Second, the legislative history underlying section 1441(d) seems clearly to confirm such an intent: "New subsection (d) of section 1441 permits the removal of any ... action [against a foreign state] at the discretion of the foreign state, even if there are multiple defendants and some of these defendants desire not to remove the action or are citizens of the State in which the action has been brought." H.R.Rep. No. 1487, 94th Cong., 2d Sess. 32, reprinted in 1976 U.S.C.C.A.N. at 6631 (emphasis added). Indeed, three of our sister circuits have found that Congress intended section 1441(d) to confer pendent party jurisdiction upon the district courts. See In re Surinam Airways Holding Co., 974 F.2d 1255, 1258-60 (11th Cir.1992) (where plaintiff brings suit against domestic defendant, and domestic defendant files third party complaint against nonimmune foreign sovereign, section 1441(d) authorizes foreign sovereign to remove the entire case); Nolan v. Boeing Co., 919 F.2d 1058, 1064-66 (5th Cir.1990) (same), cert. denied, 499 U.S. 962, 111 S.Ct. 1587, 113 L.Ed.2d 651 (1991); Teledyne, Inc., supra, 892 F.2d at 1408-10 (FSIA jurisdictional grants support pendent party jurisdiction). See also Associated Elec. & Gas Ins. Servs., Ltd. v. Texas E. Transmission Corp. (In re Tex. E. Transmission Corp. PCB Contamination Ins. Coverage Litig.), 15 F.3d 1230, 1242-44 (3d Cir.1994) (assuming, although without acknowledging the issue, that section 1441(d) supports pendent party jurisdiction), petition for cert. filed, (U.S. June 24, 1994) (No. 93-2070).
 The opposing view, however, is not without support. After delineating the foreign sovereign's right of removal, section 1441(d) goes on to state: "Upon removal the action shall be tried by the court without jury." Interpreting the word "action" to mean "entire case" in this context would result in a statutory requirement that the entire removed case would be tried without a jury. This raises serious constitutional questions. Cf. Williams v. Shipping Corp. of India, 653 F.2d 875, 881-83 (4th Cir.1981) (plaintiff who brings action against foreign sovereign has no constitutional right to jury trial because, at common law in 1791, right of action did not exist), cert. denied, 455 U.S. 982, 102 S.Ct. 1490, 71 L.Ed.2d 691 (1982); Ruggiero v. Compania Peruana de Vapores "Inca Capac Yupanqui", 639 F.2d 872, 878-81 (2d Cir.1981) (same). A basic canon of statutory interpretation dictates that a statute should be interpreted so as to avoid potential constitutional infirmity. United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404-05, 28 L.Ed.2d 822 (1971). This would suggest that the word "action" in this context be interpreted to refer only to the plaintiff's claim against the foreign state. Then, however, we could only continue to interpret the phrase "civil action" to mean the "entire case" earlier in the same section subject to the Supreme Court's oft-repeated counsel that courts " 'should not lightly infer that Congress intended [a] term to have wholly different meanings in neighboring subsections,' " National Org. for Women, Inc. v. Scheidler, --- U.S. ----, 114 S.Ct. 798, 127 L.Ed.2d 99 (1994) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 489, 105 S.Ct. 3275, 3281, 87 L.Ed.2d 346 (1985)). Indeed, this maxim would seem to have even more force where, as here, the term appears twice within the same subsection, implying that "action" should be read in a consistent fashion throughout the removal provision to refer only to the plaintiff's claims against the foreign state. Of course, reading "action" to mean "entire case" also does not accord, in light of our holding above, with the meaning of the phrase "civil action" in section 1330(a), another FSIA provision.
 
 
 [18]
 Although we hold that the district court in fact had no discretion to retain jurisdiction over the remainder of the Greenville County case following ICI's dismissal, we feel compelled to express our view that, even if discretion was properly vested in the district court, the court's exercise of such discretion would be highly questionable. We would note that, aside from the procedural posture of the case which strongly augured in favor of dismissal, cases, such as this one, involving insurance coverage of environmental cleanups generally engender difficult questions of state law, see, e.g., Jonathan R. Nash, Note, Environmental Law: An Economic Approach to the Availability of Hazardous Waste Insurance, 1991 Ann. Surv. Am. L. 455, 474-80 (1992). Indeed, in the instant case, the district court had already certified to the Supreme Court of South Carolina the question of which state's law governed the interpretation of the insurance contracts at issue in this case and that court had responded that the law of South Carolina governed, Sangamo Weston, Inc. v. National Sur. Corp., 307 S.C. 143, 414 S.E.2d 127 (1992). Further, this Court initially voted to certify additional questions of law regarding the proper interpretation of the contracts to South Carolina's high court
 
 
 [19]
 We recognize that, under our holding herein, pendent party jurisdiction, at least to the extent it exists under section 1441(d), is not functionally analogous to pendent claim jurisdiction. There is no reason to believe, however, that pendent claim and pendent party jurisdiction are analogous. Indeed, as the Court instructed in Finley, "with respect to the addition of parties, as opposed to the addition of only claims, [courts should] not assume that the full constitutional power has been congressionally authorized and [should] not read jurisdictional statutes broadly." 490 U.S. at 549, 109 S.Ct. at 2007. We would suggest that further justification for this disparate treatment may arise from the notion that the constitutional underpinnings of pendent party jurisdiction are, as opposed to those of pendent claim jurisdiction, at least somewhat in doubt. See supra note 8
 
 
 [20]
 Rule 19(a) provides, in pertinent part:
 (a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest....
 
 
 [21]
 Rule 19(b) provides:
 (b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.
 
 
 [22]
 The Seventh Circuit, we note, cited Brinco Mining Ltd. and Special Jet Services, Inc. favorably in Casualty Indemnity Exchange v. Village of Crete, 731 F.2d 457, 462 (7th Cir.1984)
 
 
 [23]
 Worse, if each court were to determine that the contamination occurred during periods not covered by the insurers appearing before it, Sangamo might be completely "whipsawed" and receive no coverage
 
 
 [24]
 By contrast, with respect to the interpretations of law, we would note that, it is, if not likely, reasonable that the second court to reach an issue of law "may be inclined to reach a similar conclusion" to the one reached by the first court. City of Littleton, 133 F.R.D. at 164 (finding, on facts similar to those presented here, that all insurers were necessary and indispensable parties). Because, were the Anderson Division case to remain in federal court, we would have certified to the South Carolina Supreme Court at least some of the controlling legal questions, it seems clear that the South Carolina state court handling the Greenville County case would follow the state supreme court's ruling in response to our certification. This, however, presents the possibility of preventing, at least in some sense, those insurers who are not parties to the case in which a legal matter is decided from presenting effective argument on the matter. Id
 
 
 [25]
 That is not to say that this case presents no other grounds from which findings of necessity and indispensability could be reached. For example, further weighing in favor of the necessity and indispensability of Globe is the fact that Globe provided primary CGL insurance coverage to Sangamo for the years 1965 to 1974. In Globe's absence, the federal district court could not adjudicate the liability, if any, of the insurers who issued excess coverage for those years only after the Globe's liability was determined, necessarily in state court. We note that the federal district court in City of Littleton, supra, 133 F.R.D. 159, found that, where an insured city whose insurers had issued it nearly identical policies, the interpretation of which presented an overarching legal question, sued some, but not all of its insurers, leaving out two of its primary insurers for given time periods, but including the excess insurers for those time periods, the absent primary insurers were necessary and indispensable parties. By focusing on the potential for factual "whipsaw" discussed in the text, however, we easily conclude that Globe and Prudential Re are necessary and indispensable parties and, consequently, need not trouble ourselves with other means by which such a conclusion might be reached
 
 
 [26]
 As discussed above in note 24, the only effect of such action would be to encourage the second court to reach a controlling legal issue to follow the result reached by the first, which would prevent the insurers not parties before the first court from preventing effective argument on that issue
 
 
 [27]
 The district court retains jurisdiction over the unrelated claims arising out of the Whitfield case, see supra note 3, which were stayed by the district court pending this appeal, and which involve only National and American